UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SHIRLEY WILSON							CIVIL ACTION NO. 07-0538

VERSUS								JUDGE HICKS

U.S. COMMISSIONER SOCIAL				MAGISTRATE JUDGE HORNSBY
SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

**Introduction**

Shirley Wilson filed an application for Supplemental Security Income on behalf of her son, GW, who suffers from several health problems. GW, who was born in 1992, was 14 when ALJ W. Thomas Bundy assessed his claim and denied benefits. Tr. 14-22. The Appeals Council denied a request for review (Tr. 5), and Ms. Wilson filed this appeal that seeks the limited judicial relief that is available under 42 U.S.C. § 405(g). It is recommended, for the reasons that follow, that the Commissioner's decision to deny benefits be affirmed.

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925

F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**Analysis**

A three-step evaluation process is used to determine whether a child is disabled under the Act. See Swist ex rel. Green v. Barnhart, 177 Fed. Appx. 414, 416 (5th Cir. 2006). The first question is whether the child is engaged in substantial gainful activity, and the ALJ found that GW was not. Tr. 16. The second question is whether the child has an impairment that is "severe" within the meaning of the regulations. The ALJ found that GW has obesity, sleep apnea, and a history of asthma, impairments which are severe. Tr. 16. The third question is whether those impairments are medically or functionally equivalent in severity to the impairments listed in the disability regulations. There is no contention that GW's impairments met a listed impairment, so the question is whether the impairments functionally equal a listed impairment.

A decision on functional equivalence requires consideration of the child's limitations in six areas or domains. The domains are:

(1) acquiring and using information

(2) attending and completing tasks

(3) interacting and relating with others

(4) moving about and manipulating objects

(5) caring for your self

(6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1). The limitations imposed by an impairment are described in increasing levels of severity: none, moderate, marked and extreme. The child will be considered disabled if he has an extreme limitation in one domain or a marked limitation in two domains. Section 416.926a(d).

Moderate is not specifically defined, but a marked limitation is defined as "more than moderate" but "less than extreme." A marked limitation interferes seriously with the child's ability to independently initiate, sustain or complete activities. It is the equivalent of the functioning you would expect to find on standardized testing with scores that are at least two but less than three standard deviations below the mean. Section 416.926a(e)(2).

An extreme limitation is "more than marked." A child has an extreme limitation when the impairment interferes very seriously with his ability to independently initiate, sustain or complete activities. Extreme is the rating given to the worst limitations, but it does necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning one would expect to find on standardized testing with scores that are at least three standard deviations below the mean. Section 416.926a(e)(3).

The ALJ found that GW had moderate limitations in the domains of acquiring and using information and attending and completing tasks. He found that GW had a marked limitation in the domain of health and physical well-being. No limitation was found in any

of the other domains. Plaintiff argues that GW has at least marked limitations in acquiring and using information or attending and completing tasks. A finding of a marked limitation in either of those domains would result in marked limitations in two domains and, thus, a finding of disabled.

Plaintiff's arguments that GW has a marked impairment in the two challenged domains is based on the child's problems caused by sleep apnea. Testing conducted when the child was 11 years old included a history that recited no significant attendance problems at that time, only minor disciplinary problems, but a history of academic difficulties. The child had been retained in the fourth grade. The testing indicated that GW had academic abilities ranging from borderline to average in various areas of study. Tr. 109-20. A report card from the seventh grade showed good marks in all but one class, with comments that the child was a good student when he was awake. Tr. 121.

A sleep test was conducted by LSUHSC Sleep Clinic in 2004. A later CPAP study demonstrated that a CPAP machine was successful in treating the child's condition. The child was seen for follow-up visits in the clinic and continued to report sleepiness during the school day. The treating physician noted that the child had, however, rarely used his CPAP at home, and the importance of compliance was stressed to the patient and the parents. Tr. 193. The child's mother testified at the hearing that GW had difficulty using the first machine he received, which goes "over the face," so she had recently received approval to obtain a model that is applied "in the nose." Tr. 223. A seventh grade report card from the

2005-06 school year showed semester average grades of B and C in academic subjects such as English, math and science, but the child had an F in world geography. Tr. 194.

The ALJ sent interrogatories to a physician, serving as a medical expert, who reviewed the child's records. The physician concluded that the child had a "less than marked" limitation in acquiring and using information and attending and completing tasks. The physician's other findings were also consistent with the findings of the ALJ. Tr. 183-89.

The ALJ, in assessing, acquiring and using information, wrote that the child's limitation was moderate because: "He has sleep apnea and sleeps during class, but was considered otherwise able to learn if he did not sleep during school instructions." With respect to attending and completing tasks, the ALJ observed that a moderate limitation was appropriate because the child slept during class, which interfered with his attention and concentration, but the child demonstrated good attention, concentration, persistence and pace during a consultative evaluation. Tr. 19-20. The ALJ's assessment of the evidence and determination of a moderate limitation in these domains was reasonable and based on objective and substantial evidence. The child certainly has limitations in these domains, and they were recognized by the ALJ, but the record reflects that the child is able to function fairly well in school despite his sleep apnea. So long as the child is awake for the actual instructional period, he is able to complete assigned work despite periods of sleeping in class. There is no basis for judicial relief with respect to this issue.

Plaintiff's second and final assignment of error is that the ALJ failed to make specific findings regarding the severity of GW's dyslexia. The ALJ noted that GW's mother had mentioned that the child had dyslexia but was doing much better. Tr. 15. The child's mother agreed at the hearing that GW was doing fine, except for sleeping too much. Tr. 223. On appeal, Plaintiff argues that dyslexia should have been considered. She points to evidence such as school records that indicated the child had difficulty with sequential order, the reversal/inversion of letters, and other symptoms related to dyslexia. Tr. 99-104.

The record mentions dyslexia-type problems, but Plaintiff does not point to any evidence that would suggest the problems rise to the level of causing a marked limitation in any domain. Absent a limitation of that degree, the lack of further discussion or consideration of dyslexia is harmless error. See Palomo v. Barnhart, 154 Fed. Appx. 426, n.13 (5th Cir. 2005) (applying harmless error of standard in social security case). Plaintiff has not established that judicial relief is warranted with respect to this argument.

Accordingly;

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be affirmed and that Plaintiff's complaint be dismissed with prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an

extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 7th day of February, 2008.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE